IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | Crim. Action No. PX 17-125 |
| MICHAEL LYNN VAUGHN, | * | |
| Defendant. | * | |

******

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Michael Lynn Vaughn's Motion to sever counts six through eight from counts one through five of the Indictment charging him with bribery, conspiracy to commit bribery and wire fraud. (ECF No. 29). For the following reasons, the motion is GRANTED.

**I.    The Indictment**

Vaughn is charged with two distinct criminal schemes that are united almost exclusively by the fact that they both involve Vaughn. Counts One through Five of the Indictment charge Vaughn with conspiracy to commit bribery involving an agent of a program receiving federal funds in violation of 18 U.S.C. § 371 and four substantive counts of bribery involving an agent of a program receiving federal funds (hereafter "bribery scheme") in violation of 18 U.S.C. § 666. These counts involve Vaughn allegedly accepting cash payments from co-conspirators Young Jung Paig ("Paig") and Shin Ja Lee ("Lee") in exchange for his using his power as a Maryland State Delegate to vote favorably for legislation benefitting the coconspirators' liquor establishments. David Dae Sok Son, a commissioner on the Prince George's County Board of License Commissioners, acted as a broker between Vaughn, Paig, and Lee. The conspiracy involved specifically identified and enumerated cash bribes given throughout 2015 and 2016 to

influence Vaughn's actions on House Bill 931 (the "Sunday Sales Bill") and House Bill 311 ("Additional Sunday Permits Bill").

Counts Six through Eight, by contrast, charge Vaughn with participating in a wire fraud scheme in violation of 18 U.S.C. §1343.  Vaughn is accused of taking unauthorized cash disbursements from his campaign's official "Friends of Michael Vaughn" (FOMV) designated bank account between 2012 and 2016. (Hereafter the "FOMV scheme").  More particularly, Counts Six through Eight allege that Vaughn would deposit checks from campaign contributors into the FOMV account and then would withdraw, via electronic transfer, cash from the FOMV account to pay personal tax payments and credit card bill.  Vaughn also filed fraudulent campaign finance reports with the Maryland State Board of Elections to conceal his fraud.

As charged, the bribery and FMOV schemes have little to do with one another. None of the cooperating coconspirators involved in the bribery scheme (Son, Paig and Lee) made campaign contributions to FOMV.  Nor is it alleged that the funds Vaughn collected from the bribery scheme were commingled with the FOMV funds.  And while the alleged time periods for the two ongoing schemes somewhat overlap, the FOMV scheme spans two years longer than the bribery scheme.

**II.     The Hearing**

At the motions hearing held on December 21, 2017, Vaughn emphasized the minimal overlap between the two charged schemes.  As Vaughn noted in his motion, the two schemes are not based on the same acts or transactions, are not common schemes, and require a jury to pass on wholly separate sets of facts to determine Vaughn's guilt or innocence.  The Government countered principally that the two schemes are united by Vaughn's common motive to extricate himself from dire financial straits, and that fact, combined with the overlapping time frame and

common defendant, justifies joinder under Federal Rule of Criminal Procedure 8(a). The Government also argued that joinder is proper because both schemes will require similar proof delivered by similar witnesses. The Government stated, for example, that it will call one witness familiar with how the Maryland House of Delegates operates regarding passage of legislation, and that this witness who will also testify about pertinent campaign finance laws. Similarly, the Government intends to call a FBI agent present during an interview with Vaughn to testify about incriminating statements made as to both charged schemes.

Upon close scrutiny of the Government's proffered evidence, assessed against the backdrop of the Indictment, joinder is not warranted and severance is compelled.

### III.    Rule 8(a) - Joinder

Rule 8(a) permits joinder of offenses when such acts are "of the same or similar character, or are based on same act or transaction, or are connected with or constitute parts of the same scheme or plan." Fed. R. Crim. P. 8(a). Importantly, although proper joinder is often "the rule rather than the exception," it is not "infinitely elastic," and "cannot be stretched to cover offenses . . . which are discrete and dissimilar." *United States v. Hawkins,* 776 F.3d 200, 206 (4th Cir. 2009). *See also United States v. Mackins*, 315 F.3d 399, 412–13 (4th Cir. 2003).

The government argues that the two charged schemes "constitute parts of a common plan or scheme perpetuated by the defendant over the course of several years, and simply form two related branches of the overall scheme." ECF No. 33 at 21. Neither scheme, however, involves the same statutes, elements of proof, witnesses or documentary evidence. While the bribery scheme focuses on the co-conspirators who allegedly paid to influence legislation, the FOMV scheme involves Vaughn's personal use of monies that rightfully belonged to his campaign. Indeed, the Government's proffer of the anticipated evidence at trial underscored the distinctions

between the two schemes. The Government noted that none of the coconspirators expected to testify regarding the bribery scheme would offer any proof on the campaign finance scheme. And although the same witness would be called to discuss both the inner workings of the Maryland House of Delegates and Maryland campaign finance, the testimony as to each scheme would have little to no overlap.

In fact, the Government confirmed that the only commonality between the two "branches" centers on Vaughn and his financial distress which, standing alone, cannot support joinder. *Mackins,* 315 F.3d at 413 (joinder of drug and money laundering conspiracy with counterfeit check conspiracy improper where only connection between two is the defendant); *Hawkins, 776* F.3d at 209 (reversing denial of severance where the "only connection" between counts is the defendant). Financial distress, while powerful, cannot unify otherwise unrelated offenses. If the law allowed otherwise, then such vastly different offenses as robbery and insider trading could be joined solely because they were both committed by a financially strapped defendant. Joining the bribery and FOMV schemes in one trial is not proper.

### IV. Relief from Prejudicial Joinder under Rule 14

Alternatively, even if the two schemes were properly joined under Rule 8(a), severance is warranted under Rule 14(a) so as to cure the prejudice arising from joinder. Vaughn principally argues that trying such factually and legally distinct criminal schemes together will perpetrate "open season" on Vaughn, with the hope that a jury — not convinced beyond a reasonable doubt on either allegation standing alone — will nonetheless convict Vaughn for his general propensity to behave like a corrupt politician. ECF No. 29 at 4. The Government counters that because evidence of one scheme would be properly admitted as "other acts" evidence under Rule 404(b) of the Federal Rules of Evidence to show "his financial status and motive for bribery, and vice

versa," Vaughn cannot make a "strong showing" of actual prejudice. ECF No. 33 at 22. Again, Vaughn has the better argument.

Although the Court may permit *some* 404(b) evidence about Vaughn's financial distress as motive, several days of evidence as to an unrelated criminal scheme visits far more prejudice on the defendant than probity for the jury. This is especially so when the Government already intends to introduce Vaughn's bank records, tax returns, and recorded conversations that demonstrate his financial distress. *See, e.g.*, ECF No. 55 (Government proffer that it intends to introduce evidence of routinely delinquent credit card bills, low-balance bank accounts, mortgage records, and wiretap messages reflecting a host of delinquent payment messages from various financial institutions). Allowing additional evidence of financially motivated *criminal* activity, is both cumulative – and thereby minimally probative – and highly prejudicial because of its criminal nature. In this regard, Vaughn has made a strong showing of actual prejudice that may only be cured by ordering separate trials. *See, e.g. United States v. Foutz,* 540 F.2d 733, 736 (1976).[1]

### IV. CONCLUSION

For the above stated reasons, Defendant's motion to sever (ECF No. 29) is GRANTED.

January 25, 2018 /S/
Paula Xinis
United States District Judge

---

[1] Although Vaughn need not decide at this juncture whether he will testify in his defense at trial, the Court notes that joinder would present to Vaughn a Hobson's choice which visits its own prejudice on him. Because the schemes are so different in nature and manner of proof, Vaughn may wish to testify, asserting his innocence to one scheme, but would otherwise invoke his Fifth Amendment right to remain silent as to the other scheme. If the schemes are joined in one trial, Vaughn would be forced to either forfeit his testimony in defense of one scheme, or admit guilt to the jury on the other. *See Foutz*, 540 F.2d at 736 (4th Cir. 1976); *see also Cross v. United States*, 335 F.2d 987, 989 (D.C. Cir. 1964).